UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| EDDIE M. VARGAS,<br><br>　　　　　Plaintiff,<br><br>　v.<br><br>MIKE KNOWLES,<br><br>　　　　　Defendant. | Case No. 5:03-cv-02930-EJD<br><br>**ORDER DENYING MOTION TO AMEND PETITION FOR WRIT OF HABEAS CORPUS**<br><br>Re: Dkt. No. 240 |

In this habeas corpus proceeding under 28 U.S.C. § 2254, Petitioner Eddie M. Vargas ("Petitioner") challenges his August 15, 1997 conviction in Santa Clara County Superior Court for first-degree murder and conspiracy to commit murder. Presently before the Court is Petitioner's motion for leave to file an amended habeas petition. Dkt. No. 240. Specifically, Petitioner seeks leave to add certain claims for habeas relief that Petitioner has only recently exhausted in state court habeas proceedings. Respondent Mike Knowles ("Respondent") opposes the motion on the grounds that the new claims are procedurally defaulted and untimely. Dkt. No. 241. After reviewing the parties' submissions, the Court agrees with Respondent. The motion to amend the habeas petition is DENIED.

**I.   BACKGROUND**

The accusations against Petitioner center on his involvement in the murder of Eli Rosas ("Rosas"), a member of the Northern Structure gang. Raul Reveles ("Reveles") and Timo Hernandez ("Hernandez"), two brothers, were convicted in a separate trial of stabbing Rosas to death. The prosecution's theory was that Petitioner had ordered and authorized the killing of Rosas by the brothers. The key evidence at Petitioner's trial was the testimony of two cooperating

1

Case No.: 5:03-cv-02930-EJD
ORDER DENYING MOTION TO AMEND PETITION FOR WRIT OF HABEAS CORPUS

gang members, Louie Chavez ("Chavez") and Jerry Salazar ("Salazar"). Chavez and Salazar testified that, on the night that Rosas was killed, they held a three-way conference call with Petitioner, during which Petitioner gave them the verbal authorization to tell Reveles and Hernandez to kill Rosas. Largely on the basis of this evidence, Petitioner was convicted on both counts and sentenced to 60 years to life.

Petitioner timely appealed the judgment and sentence. In conjunction with his direct appeal, Petitioner sought a writ of habeas corpus in the state appellate court. The Sixth District Court of Appeal denied the direct appeal in People v. Vargas, 91 Cal. App. 4th 506 (2001), as well as Petitioner's habeas petition. The California Supreme Court denied review on December 11, 2001, rendering Petitioner's conviction final. On October 1, 2002, Petitioner filed a pro per petition for habeas corpus in the California Supreme Court. On April 30, 2003, the petition was denied as well.

On June 24, 2003, Petitioner filed another pro per habeas petition with this Court, pursuant to 28 U.S.C. § 2254. Dkt. No. 1. Petitioner included 14 claims for relief, all of which he and Respondent agreed he had exhausted in his previous state habeas petitions. Dkt. No. 20-1 at 2. On June 15, 2005, Petitioner moved for the appointment of counsel pursuant to 18 U.S.C. § 3006A(a)(2). On July 21, 2005, the Court appointed counsel ("previous counsel"). Dkt. No. 142. On August 29, 2007, through previous counsel, Petitioner filed a traverse, which amended and supplemented the original petition by adding several new claims. Dkt. No. 154.

In the traverse, Petitioner identified four "areas" of evidence that he contended would undermine the trial testimony from Chavez and Salazar about the phone call with Petitioner. Id., ¶ 9. The first was the testimony of Roland Saldivar ("Saldivar"), a close friend of Salazar's who was staying with him on the night of the Rosas murder. Id., ¶ 9-1. Saldivar's statements to a police investigator contradicted aspects of the trial testimony from Chavez and Salazar. Id. The second area was Chavez' testimony at the Reveles trial, which contradicted Salazar's testimony at Petitioner's trial. Id., ¶ 9-2. The third area was testimony from Petitioner's former sister-in-law, Michele Valderrama ("Valderrama"), who testified for the prosecution at Petitioner's trial. Id.,

2
Case No.: 5:03-cv-02930-EJD
ORDER DENYING MOTION TO AMEND PETITION FOR WRIT OF HABEAS CORPUS

¶ 9-3. Her trial testimony, as well as some statements she had made before trial, contradicted some of the trial testimony that Chavez and Salazar offered. Id. The fourth area was the testimony of Chico Guzman ("Guzman"), who had conducted a personal investigation of the killing. Id., ¶ 9-4. Guzman testified that Chavez and Salazar had told him a different story than the one they gave at trial. Id. By failing to highlight these contradictions despite Petitioner's requests, Petitioner contended that his trial counsel had been so ineffective as to violate the Sixth Amendment's guarantee of counsel. Id., ¶¶s 10-17.

On June 23, 2008, the Court held that Petitioner had not yet exhausted these new claims in state court. Dkt. No. 172. On November 18, 2008, the Court granted Petitioner's motion to stay federal proceedings to allow Petitioner to file a state habeas petition and exhaust the new claims. Dkt. No. 189. On June 11, 2010, frustrated with the progress of his state petition, Petitioner moved to replace previous counsel. Dkt. No. 192. The Court denied the motion on March 28, 2011. Dkt. No. 195.

Meanwhile, on February 4, 2011, Petitioner filed a supplemental petition for habeas corpus in state court. Dkt. No. 240-1, Ex. A. On February 16, 2011, the Superior Court denied the petition as procedurally barred. Id., Ex. B. On November 14, 2011, this Court reopened the case at Petitioner's request. Dkt. No. 207. On November 28, 2012, the Court granted Petitioner's renewed request to appoint new counsel, citing irreconcilable differences between Petitioner and previous counsel. Dkt. Nos. 224, 226. Through his new counsel, on April 3, 2015, Petitioner filed the instant motion, in which he seeks to amend his previous petition to add the four claims discussed above. Dkt. No. 240.

## II. LEGAL STANDARD

A petition for a writ of habeas corpus "may be amended or supplemented as provided in the rules of procedure applicable to civil actions." 28 U.S.C. § 2242; see also Fed. R. Civ. P. 81(a)(4). Under Federal Rule of Civil Procedure 15(a), a habeas petitioner may seek leave of court to amend his pleading at any time during the proceeding. See Mayle v. Felix, 545 U.S. 644, 655 (2005). "The [C]ourt should freely give leave when justice so requires." Fed. R. Civ. P.

3

Case No.: 5:03-cv-02930-EJD
ORDER DENYING MOTION TO AMEND PETITION FOR WRIT OF HABEAS CORPUS

15(a). However, the Court may deny a motion for leave to amend a habeas petition if the respondent shows bad faith, undue delay, prejudice to the respondent, or that amendment would be futile. Nunes v. Ashcroft, 375 F.3d 805, 808 (9th Cir. 2003) (citing Bonin v. Calderon, 59 F.3d 815, 845 (9th Cir. 1995)). "Futility alone can justify the denial of a motion for leave to amend." Id. (citing Bonin, 59 F.3d at 845).

## III.   DISCUSSION

Respondent urges the Court to deny the motion to amend on the grounds that the proposed claims are futile because they are procedurally defaulted and untimely. Respondent also contends that Plaintiff has not made a sufficient showing of actual innocence such that he may obtain collateral review. The Court considers each argument in turn.

### A.   Procedural Default

Respondent's first contention is that Plaintiff's amendments are futile because the proposed claims are procedurally defaulted. Under the doctrine of procedural default, a federal court may "not review the merits of [habeas] claims, including constitutional claims, that a state court declined to hear because the prisoner failed to abide by a state procedural rule." Martinez v. Ryan, 132 S. Ct. 1309, 1316 (2012) (citing Coleman v. Thompson, 501 U.S. 722, 747-48 (1991); Wainwright v. Sykes, 433 U.S. 72, 84-85 (1977)).

On initial review of Petitioner's state court habeas petition, the Superior Court of California, County of Santa Clara found that his new claims were procedurally barred under In re Clark, 5 Cal. 4th 750 (1993). Dkt. No. 240-1, Ex. B. The Court of Appeal and the California Supreme Court summarily denied Petitioner's appeals. Id., Ex. C; id., Ex. D. Under Ylst v. Nunnemaker, 501 U.S. 797 (1991), "where . . . the last reasoned opinion on the claim explicitly imposes a procedural default, we will presume that a later decision rejecting the claim did not silently disregard that bar and consider the merits." Id. at 803. Here, then, the Court may assume that the California Supreme Court found that Petitioner had procedurally defaulted his new claims.

#### i.   Cause and Prejudice

Despite a procedural default, a habeas petitioner may still "obtain federal review of a

defaulted claim by showing cause for the default and prejudice from a violation of federal law." Martinez, 132 S. Ct. at 1316 (citing Coleman, 501 U.S. at 750). "Cause for a procedural default exists where 'something *external* to the petitioner, something that cannot fairly be attributed to him[,] . . . "impeded [his] efforts to comply with the State's procedural rule."'" Maples v. Thomas, 132 S. Ct. 912, 922 (2012) (alterations in original) (quoting Coleman, 501 U.S. at 753).

"The rules for when a prisoner may establish cause to excuse a procedural default are elaborated in the exercise of the Court's discretion." Martinez, 132 S. Ct. at 1318 (citing McCleskey v. Zant, 499 U.S. 467, 490 (1991)). "Examples of sufficient causes include 'a showing that the factual or legal basis for a claim was not reasonably available to counsel,' or 'that "some interference by officials" made compliance impracticable.'" Cook v. Schriro, 538 F.3d 1000, 1027 (9th Cir. 2008) (quoting Murray v. Carrier, 477 U.S. 477, 488 (1986)). Because the prisoner's attorney acts as the prisoner's agent, "[n]egligence on the part of a prisoner's postconviction attorney does not qualify as 'cause.'" Maples, 132 S. Ct. at 922 (quoting Coleman, 501 U.S. at 753). However, when a prisoner's attorney in post-conviction proceedings is not merely negligent but effectively abandons the prisoner, the abandonment may serve as cause that excuses a procedural default. Id. at 922-24 (citing Holland v. Florida, 560 U.S. 631 (2010)).

To establish cause, Petitioner cites the delay he and his previous counsel encountered in obtaining the transcripts from the Reveles and Hernandez trial. To start with, the ineffective assistance claims related to Valderrama and Guzman are based on inconsistencies in their testimony in Petitioner's own trial. The Reveles and Hernandez trial transcripts have nothing to do with these claims.

The delay argument is no more persuasive as to the remaining claims. As Respondent points out, during Petitioner's own trial, his trial counsel cross-examined Chavez and Salazar on discrepancies between their testimony at Petitioner's trial and their testimony in the Reveles and Hernandez trials. Rep.'s Tr., 12224-28, 13551-52. Petitioner's trial counsel also mentioned the inconsistent testimony in his closing argument. Rep.'s Tr., 19654. The facts underlying the new claims, therefore, were reasonably available to Petitioner.

Petitioner also finds cause in previous counsel's delay in obtaining these transcripts, or, alternatively, in previous counsel's alleged abandonment. However, the issue here is whether Petitioner could have complied with the state procedural rule. The performance of Petitioner's federal postconviction counsel, who was appointed years after Petitioner filed his initial state habeas petition, therefore cannot establish cause.

In any case, Petitioner has made no showing that the Reveles and Hernandez trial transcripts were unavailable to previous counsel. In support of this contention, Petitioner cites a 2008 declaration in which previous counsel attested that he spent months learning that Salazar and Chavez had testified at the Reveles and Hernandez trials, obtaining those trial transcripts from the Court of Appeal, and analyzing those transcripts. Dkt. No. 184, ¶¶s 7-9. However, notably, that declaration does not indicate that previous counsel had any difficulty in obtaining the trial transcripts:

> I tried to ascertain the relevance and importance of the Reveles and Hernandez trial transcripts and to locate them. After interviewing many people, including one of their trial counsel, I focused on their separate appellate files, in storage with the California Court of Appeals, Sixth Appellate District. After I ordered them from storage, I reviewed and copy [sic] the relevant portions of the trial transcripts . . . .

Id., ¶ 8. Nothing in the declaration indicates how many of those months he spent learning about the factual basis underlying these new claims as opposed to developing them.

Nor has Petitioner shown that his previous counsel abandoned him at any time relevant to the claims at issue. Petitioner compares his situation to that in Holland v. Florida, where the petitioner "allege[d] that his attorney essentially 'abandoned' him, as evidenced by counsel's near-total failure to communicate with petitioner or to respond to petitioner's many inquiries and requests over a period of several years." 560 U.S. at 659 (Alito, J., concurring in part and concurring in the judgment). To make matters worse, when the Holland petitioner sought to fire his counsel, his motions were denied in part "on the perverse ground that petitioner failed to act through appointed counsel." Id. Here, by contrast, Petitioner does not dispute that previous counsel represented him diligently for over four years, starting from his appointment through

6
Case No.: 5:03-cv-02930-EJD
ORDER DENYING MOTION TO AMEND PETITION FOR WRIT OF HABEAS CORPUS

developing the claims at issue here and until well after this case was stayed for Petitioner to exhaust the new claims in state court. Dkt. Nos. 142, 154, 189. Any abandonment by previous counsel occurred after he had investigated and presented the new claims, and it bears no relation to the state procedural bar. Petitioner has not shown cause to excuse his procedural default of the newly added claims.

### ii. *Martinez* Exception

A "narrow exception" to the ordinary cause-and-prejudice rule applies where state law requires claims of ineffective assistance of trial counsel to be raised in a so-called "initial-review collateral proceeding," Martinez, 132 S. Ct. at 1315, or where a state's procedural framework renders it "highly unlikely in a typical case that a defendant will have a meaningful opportunity to raise a claim of ineffective assistance of trial counsel on direct appeal." Trevino v. Thaler, 133 S. Ct. 1911, 1921 (2013). In these states, "[a] procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial if, in the initial-review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective." Trevino, 133 S. Ct. at 1921 (quoting Martinez, 132 S. Ct. at 1320). "The underlying claim is substantial if the petitioner has demonstrated that the claim has some merit." Martinez, 132 S. Ct. at 1318-19.

This exception does not apply here. The Supreme Court has limited this exception to ineffective representation in state postconviction proceedings when the petitioner, for procedural or practical reasons, had no prior opportunity to raise a claim about the ineffectiveness of trial counsel. Martinez, 132 S. Ct. at 1315; Trevino, 133 S. Ct. at 1921. In this case, Petitioner could and did raise ineffective assistance of trial counsel claims on direct appeal, as well as in his first state habeas petition. See Dkt. No. 22, Ex. 1 at 23-25; id., Ex. 3 at 26-29. Petitioner discusses only the alleged ineffectiveness of his previous counsel in this proceeding, which is irrelevant to the Martinez exception. Moreover, as above, the purported abandonment occurred after previous counsel had already developed the new claims. Petitioner's procedural default does not fall within the Martinez exception. His new claims, therefore, are futile because they are procedurally defaulted.

### B. Statute of Limitations

Separately, Respondent contends that Petitioner's new claims are futile because they are untimely. The Antiterrorism and Effective Death Penalty Act ("AEDPA") provides for a one-year limitations period on habeas claims by prisoners held pursuant to a state court judgment. 28 U.S.C. § 2244(d)(1); Ford v. Gonzalez, 683 F.3d 1230, 1234 (9th Cir. 2012).

#### i. Relation Back

Petitioner contends that his new claims relate back to the date of his original petition. Federal Rule of Civil Procedure 15(c)(2) provides that "an amendment of a pleading relates back to the date of the original pleading when . . . the claim . . . asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading." In the context of a habeas proceeding, the "original pleading" is the petition. Mayle, 545 U.S. at 655. "An amended habeas petition 'does not relate back . . . when it asserts a new ground for relief supported by facts that differ in both time and type from those the original pleading set forth." Hebner v. McGrath, 543 F.3d 1133, 1138 (9th Cir. 2008) (quoting Mayle, 545 U.S. at 650). "The original and amended claims must, instead, be 'tied to a common core of operative facts.'" Id. (quoting Mayle, 545 U.S. at 664)).

Respondent concedes that Petitioner's first new claim relates to a claim in his original petition. In both, Petitioner contends that his trial counsel was ineffective because he failed to elicit testimony from Saldivar to contradict trial testimony from Chavez and Salazar. The two claims are tied to a common core of operative facts. Petitioner's first claim, therefore, relates back to his original federal petition, and it is timely.

The remaining claims, however, do not and are not. Petitioner suggests that the new claims should relate back because they all involve trial counsel's deficient performance while cross-examining Chavez and Salazar. But the facts underlying these three claims are Chavez' testimony in the Reveles trial and the potential testimony from Valderrama and Guzman. None of these facts appeared among the ineffective assistance of trial counsel claims in Petitioner's original federal petition. The remaining claims must satisfy AEDPA's statute of limitations.

8

Case No.: 5:03-cv-02930-EJD
ORDER DENYING MOTION TO AMEND PETITION FOR WRIT OF HABEAS CORPUS

### ii. Start of Limitations Period

The limitations period does not begin running until the judgment becomes final, which occurs when the prisoner's direct appeals have concluded or when the time for seeking such review has expired. 28 U.S.C. § 2244(d)(1)(A). The limitations period also cannot begin until "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence." Id. § 2244(d)(1)(D). The due diligence provision only applies "'if vital facts could not have been known' by the date the appellate process ended." Ford, 683 F.3d at 1235 (quoting Schlueter v. Varner, 384 F.3d 69, 74 (3d Cir. 2004)). "The 'due diligence' clock starts ticking when a person knows or through diligence could discover the vital facts, regardless of when their legal significance is actually discovered." Id. (quoting Hasan v. Galaza, 254 F.3d 1150, 1154 n.3 (9th Cir. 2001)).

Petitioner's judgment became final after his direct appeal was denied on August 6, 2001 and the California Supreme Court denied review on November 11, 2001. Dkt. No. 22, Exs. 1, 2. Petitioner contends that the limitations period did not commence until his previous counsel was appointed in this federal proceeding and had a reasonable opportunity to investigate these new claims.

The Court disagrees. As discussed above, two of Petitioner's new claims rely on alleged contradictions in witness testimony at Petitioner's own trial. As to the other potentially untimely claim, Petitioner observes that it depends on the transcripts from the Reveles and Hernandez trials. Even so, the facts underlying the claim could have been known, and in fact were known, by the time of Petitioner's trial, regardless of when he discovered their legal significance. See Ford, 683 F.3d at 1235. As above, Petitioner's trial counsel cross-examined Chavez and Salazar on the discrepancies in their testimony at the different trials. The due diligence provision does not extend the start date for the statute of limitations beyond the close of Petitioner's trial.

Moreover, after the Court appointed previous counsel for Petitioner, previous counsel did not present these new claims for over two years. Accepting that previous counsel acted with due diligence in taking months to obtain the relevant transcripts, the date that previous counsel

obtained the transcripts was the date when Petitioner discovered the factual predicate of the claims presented. It still took over a year after that date for Petitioner to bring the claims at issue. Even if the due diligence provision applied, therefore, the claims would still be untimely.

### iii. Equitable Tolling

A court may equitably toll the AEDPA statute of limitations if the habeas petitioner shows "'(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." Holland, 560 U.S. at 649 (quoting Pace v. DiGuglielmo, 544 U.S. 408, 418 (2005)). "'[A] garden variety claim of excusable neglect,' such as a simple 'miscalculation' that leads a lawyer to miss a filing deadline, does not warrant equitable tolling." Id. at 650-51 (quoting Irwin v. Dep't of Veterans Affairs, 498 U.S. 89, 96 (1990); Lawrence v. Florida, 549 U.S. 327, 336 (2007)). But when an attorney's misconduct is "sufficiently egregious," it may constitute an extraordinary circumstance that warrants equitable tolling. Bills v. Clark, 628 F.3d 1092, 1097 (9th Cir. 2010) (quoting Spitsyn v. Moore, 345 F.3d 796, 800-01 (9th Cir. 2003)).

Petitioner has not shown such an extraordinary circumstance. As discussed above, even if Petitioner's previous counsel abandoned him, he did so after developing the new claims. In other words, any abandonment by previous counsel occurred after the statute of limitations had already expired. Petitioner points to no other egregious misconduct that might warrant equitable tolling. Therefore, aside from being procedurally barred, Petitioner's second, third, and fourth new claims are also untimely under AEDPA.

### C. Actual Innocence

Even if a petitioner cannot show cause and prejudice for a procedural default or fails to comply with the statute of limitations, the petitioner may still obtain collateral review in federal court "by demonstrating actual innocence of the crime underlying his conviction." Vosgien v. Persson, 742 F.3d 1131, 1134 (9th Cir. 2014) (citing Schlup v. Delo, 513 U.S. 298, 313-15 (1995); McQuiggin v. Perkins, 133 S. Ct. 1924, 1928 (2013)); see also Coleman, 501 U.S. at 750 (permitting federal habeas review of procedurally defaulted claims when the prisoner can

"demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice"). To make a sufficient showing of actual innocence, the petitioner must establish that, "'in light of all the evidence,' 'it is more likely than not that no reasonable juror would have convicted him.'" Bousley v. United States, 523 U.S. 614, 623 (1998) (quoting Schlup, 513 U.S. at 327-28). The petitioner must "present[] evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error." Vosgien, 742 F.3d at 1134 (quoting Schlup, 513 U.S. at 316).

Petitioner observes that the case against him rested on the trial testimony that he now seeks to challenge and that the inconsistencies that he has identified may undermine the finding that Petitioner was guilty. Petitioner is correct that constitutional violations may delegitimize a conviction; after all, that is the purpose of habeas review. However, Petitioner has not presented, and has not attempted to present, evidence of his innocence so strong that it proves that no reasonable juror would have convicted him. In the absence of such evidence of actual innocence, procedural default and the statute of limitations still preclude Petitioner from adding his new claims.

**IT IS SO ORDERED.**

Dated: August 10, 2016



EDWARD J. DAVILA
United States District Judge

11
Case No.: 5:03-cv-02930-EJD
ORDER DENYING MOTION TO AMEND PETITION FOR WRIT OF HABEAS CORPUS